UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| SHEEREN BOBROWSKY, | : | 07 Civ. 8817 (SCR) |
| | : | |
| Plaintiff, | : | |
| | : | MEMORANDUM |
| v. | : | DECISION |
| | : | AND ORDER |
| | : | |
| THE CITY OF YONKERS, THE YONKERS | : | |
| CORPORATE COUNSEL and LAURENCE | : | |
| PORCARI; THE YONKERS CRIMINAL | : | |
| COURT and JUDGE WOOD; THE YONKERS | : | |
| POLICE DEPARTMENT, P.O. RENZI and P.O. | : | |
| JOHN DOES; THE WESTCHESTER FAMILY | : | |
| COURT and JUDGE DAVID KLEIN; THE : | | |
| WESTCHESTER D.A., ADA R. SMITH, | : | |
| ADA LOGIN, ADA GARETTO and JOHN DOES | : | |
| | : | |
| Defendants. | : | |

---

STEPHEN C. ROBINSON, District Judge:

## I. BACKGROUND

On October 12, 2007, pro se plaintiff Ms. Sheeren Bobrowsky ("Plaintiff")

submitted to this Court a complaint and request for Declaratory and Injunctive Relief

against multiple city, county, and state defendants ("Defendants"). On December 3,

2007, the Plaintiff retained counsel and two days later Plaintiff and counsel appeared

before this Court. The Plaintiff is "claiming that she is suffering irreparable injury as a

result of [Defendants'] unconstitutional actions and omissions and claiming a likelihood

of success on the merits of her underlying complaint which seeks money damages against

the defendants for violation of her rights under the U.S. Constitution and 42 U.S.C.

§1983; 42 U.S.C. §1985(3); 42 U.S.C. §407(a) and (b); 18 U.S.C. §1031 and the Americans with Disabilities Act." Messina Aff. 2, ¶ 4.  The Plaintiff alleges that Defendants' acts have (1) interfered with and denied Plaintiff the right to occupy her residence, (2) resulted in seizure of her personal property and papers from that home without her authority, permission, or a search warrant, and (3) diverted her social security benefits.  She seeks from this Court an immediate Order requiring Defendants to modify any and all Orders of Protection issued or caused to be issued by them, and permitting her access, use, and occupancy of her home pending the outcome of all City, County, and State civil and criminal matters.

II.  FACTS

The facts of this case are convoluted and somewhat astonishing.  The Plaintiff alleges that on February 28, 2006 she was assaulted in the City of Yonkers.  She called the Yonkers Police Department, and Police Office Renzi (now a Defendant in this action) was one of several officers to respond to the scene.  The Plaintiff alleges that despite her injuries and her ability to identify the perpetrator, Officer Renzi refused to file a complaint.  When the Plaintiff insisted that an investigation take place, she was allegedly told that if she persisted she would be taken to a psychiatric hospital.  The Plaintiff later filed a complaint against Officer Renzi with the Yonkers City Police Department.  In March 2006, the Plaintiff also filed a complaint of police misconduct with the Westchester County District Attorney's Office.  This report was forwarded to the Yonkers Police Department for review.  The Plaintiff alleges that after these reports were filed, meetings took place between the District Attorney's Office and the Yonkers Police

Department without the Plaintiff present.  She also claims to have later discovered that the man who allegedly assaulted her was related to a member of the Yonkers City Fire Department, insinuating that the police had an ulterior motive for not filing her complaint.

In April 2006, Jacques Bobrowsky – Plaintiff's brother, who was living in the Plaintiff's residence at 88 Fanshaw Avenue in Yonkers, New York – filed a complaint against the Plaintiff with the Yonkers City Police Department alleging that the Plaintiff had stolen their mother's home by forging deeds.  As a result of this complaint, Plaintiff commenced a civil action in the New York State Supreme Court, Westchester County for quiet title.

In early May, Jacques Bobrowsky allegedly called the Yonkers City Police Department and advised the police that the Plaintiff was "out of control", is "bi-polar", and is a drug addict. Messina Aff. 5.  The Plaintiff also called the police, alleging that Jacques had threatened her.  When the police – including Defendant Renzi – responded, they allegedly took sides with the Plaintiff's brother.  After ceding to the officers' demands and telling them what medications she was taking, the Plaintiff was removed from her residence and taken to St. Joseph's Hospital in Yonkers where the police advised doctors that the Plaintiff was a "violent EDP" (emotionally disturbed person).  The Plaintiff was admitted to the hospital and released when doctors found no medical evidence to support the officers' allegations.

In June, again allegedly at the instigation of Jacques Bobrowsky, the police appeared at Plaintiff's home, entered, and forcibly removed the Plaintiff from her bathtub.  When the Plaintiff left her home, the officers served her with an Order of

3

Protection that included removal. The Order was entered based on an ex parte application by Jacques Bobrowsky to the Yonkers City Family Court. Plaintiff was not permitted back into her home to retrieve any personal belongings or medications. She appeared in Family Court on June 20 and 23, 2006, during which time she was living out of her car.

On the 23rd, Plaintiff and her then-attorney were able to negotiate a stipulation with the Plaintiff's brother and mother that would allow the Plaintiff to return to her home. However, the Westchester County Family Court refused to entertain the stipulation, instead entering an Order of Protection directing the Plaintiff to refrain from stalking or menacing her mother and to stay away from her mother's bedroom. Upon returning home, the Plaintiff found her personal belongings missing. Plaintiff appealed the Family Court decision to the Appellate Division, Second Department, but in September, 2007 the Appellate Division denied Plaintiff's motion to dismiss and enlarged time for her to perfect the appeal. Schmidt Declaration in Opp'n  3 ¶ 7.

In mid-July 2006, Jacques Bobrowsky allegedly became violent toward the Plaintiff. Plaintiff called the New York State Trooper dispatcher to request help and asked that the matter not be referred to the Yonkers City Police Department. The dispatcher explained that the matter had to be referred, and despite the Plaintiff's effort to withdraw the complaint the dispatcher contacted the Yonkers Police Department, who recognized Plaintiff's name and address. Defendant Renzi allegedly responded with 35 officers, emergency medical units, and other specialized units of the Yonkers Police Department and proceeded to arrest the Plaintiff based on Jacques Bobrowsky's word that Plaintiff had been ordered confined to a specific portion of the house and had

4

violated the order. Lillian Bobrowsky, Plaintiff's 80-year-old mother, was brought to police headquarters where Officer Renzi prepared her statement: "On July 15, 2006 at approximately 6:30 P.M. my daughter Sheeren Bobrowsky stood in front of my bedroom and stared angrily at me. This caused me to feel intimidated and fearful for my safety. This continued until approximately 8:00 P.M., at which time the police arrived. I have a valid order of protection against my daughter which states that she is to stay away from my bedroom. I would like to press charges. This statement was written for me by Officer Renzi and is true." Messina Aff. 8, Ex B-1.

At Plaintiff's arraignment for the charges brought pursuant to this complaint, a Criminal Court Order of Protection was issued instructing the Plaintiff to stay away from "the home of Jacques Bobrowsky and Lillian Bobrowsky." Messina Aff. 8, Ex. B-2. In October, the Plaintiff was convicted in a jury trial in Yonkers City Court of criminal contempt in the second degree for violating the orders of protection. Messina Aff. Ex. C. As of the Plaintiff's last appearance before this Court she had yet to be sentenced.

On January 3, 2008, the New York State Supreme Court, Westchester County entered a Decision finding that Plaintiff is the fee simple owner of 88 Fanshaw Avenue. Messina Aff. Ex. A. The orders of protection prohibiting Plaintiff from entering the residence, however, have yet to be modified.

The Plaintiff requests that the orders of protection be enjoined, and that the Defendants demonstrate the need for such orders and then fashion a proposed order "that accomplishes the proven remedies." Messina Aff. 11. The Plaintiff further requests that this Court determine what if any order is appropriate.

The Defendants offer several responses to Plaintiff's claims, including that Plaintiff has not met her burden for declaratory and injunctive relief, 11th Amendment immunity, and the shared defense that Plaintiff's claims should be dismissed pursuant to the *Younger* doctrine. This Court addresses only the shared, threshold issue of prudential limitations on federal court jurisdiction.

III.   ANALYSIS

Despite the terrible instances alleged by the Plaintiff, it is difficult to see how this Court may exercise jurisdiction without violating the principles of federalism and comity so deeply ingrained in our judicial system. *See Younger v. Harris*, 401 U.S. 37, 46 (1971). The Plaintiff alleges several injuries brought upon her by various state and local actors, and she looks to this Court to remedy these injuries by enjoining further state court proceedings. However, it is well established that federal courts, except in the most extraordinary circumstances, should not enjoin state court criminal, *Younger*, 401 U.S. at 43 – 44, or civil, *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 604 (1975), actions.

"A federal court must refrain from hearing a federal constitutional claim when (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for federal judicial review of [ ] federal constitutional claims." *Kunz v. New York State Comm'n on Judicial Conduct*, 356 F.Supp.2d 188, 192 – 93 (N.D.N.Y. 2005). First, in the instant case, no party contests the existence of state proceedings. Second, these proceedings concern issues of property, family law, and criminal law – all areas pertaining to state interests and long understood to be the province of the state. Third, with respect to these

6

controversies, the Plaintiff has a full judicial process, including appeals, available to her. She does not need a federal court to act as a monitor of the state courts, nor should she expect a federal court to act as the über court with respect to her federal claims. The state courts are perfectly capable of adjudicating federal constitutional claims, and in fact "Younger generally prohibits [federal] courts 'from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings'...." *Kunz*, 356 F.Supp.2d at 192 (quoting *Spargo v. N.Y. Comm'n on Judicial Conduct*, 351 F.3d 64, 75 (2d Cir. 2003)).

The Plaintiff alleges that her case exhibits the type of extraordinary circumstances that would allow this Court to exercise jurisdiction because she cannot rely on the state courts or local law enforcement to vindicate and enforce her rights. However, in at least one instance in this case, the state court did vindicate the Plaintiff's rights by finding that she is the owner of her residence. Moreover, there is nothing to show that the Plaintiff will suffer irreparable harm if this Court fails to enter equitable relief, and without a showing of great and immediate irreparable harm, *see Davis v. Lansin*, 851 F.2d 72, 76 (2d Cir. 1988) (citing *Younger*, 401 U.S. at 46), equitable principles counsel against interference by the federal courts in state court matters. Although this Court does not question the anguish and frustration Plaintiff has suffered as a result of her current family turmoil, these circumstances do not amount to the extraordinary circumstances envisioned by the Supreme Court in *Younger*. There the Court gave examples where prosecution was brought in bad faith or for the purposes of harassment. *See Younger*, 401 U.S. at 48 – 49. *See also Kunz*, 356 F.Supp.2d at 193 ("...'so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would

make abstention inappropriate, the federal courts should abstain.'") (quoting *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 432, 435 (1982)).  The allegations in this case do depict harsh, and seemingly unwarranted, behavior by local law enforcement, and the Plaintiff further maintains that despite the state court ruling deeming her the owner of 88 Fanshaw Avenue, local law enforcement still refuse to allow her to enter her home because of the Order of Protection entered against her.  However, the alleged behavior does not rise to the level of, for example, prosecution for the sole purpose of discouraging the assertion of constitutional rights.  *See Younger*, 401 U.S. at 48 (discussing *Dombrowski v. Pfister*, 380 U.S. 479 (1965) as an example of a case where the Court found extraordinary circumstances that warranted entering an injunction).  Plaintiff has ample recourse available to her in the state courts.  Therefore, there are no extraordinary circumstances to warrant action by this Court.


IV.  Conclusion

The Plaintiff here essentially requests that this Court supervise the proceedings of the state court, but such a request is contrary to bedrock notions of federalism and comity.  The District Court was not intended to oversee the state courts.  Instead, the judicial system is designed to promote deference and respect between the state and federal judicial systems.  This Court must abstain from hearing this matter.

The Clerk of the Court is directed to close this case.

*It is so ordered.*

Dated: _____, 2008
    White Plains, New York

    _____
    Stephen C. Robinson
    United States District Judge

8